

**U.S. Department of Justice**

Antitrust Division

*New York Office*

*26 Federal Plaza*
*Suite 3630*
*New York, New York 10278-0004*

*212/335-8034*
*FAX 212/335-8023*

August 28, 2017

**VIA ECF**
Hon. Jose L. Linares
Chief Judge
United States District Court, District of New Jersey
Martin Luther King Jr. Federal Building and Courthouse
50 Walnut Street
Newark, NJ 07102

Re: United States v. Vincent Opalewski, et al.
Crim. No. 16-CR-65 (JLL)

Dear Judge Linares:

Please accept this letter reply brief in lieu of a more formal submission in support of the Government's motion *in limine* to permit witnesses to state their personal opinions, pursuant to Fed. R. Evid. 701, concerning whether bids submitted by GEO Specialty Chemicals, Inc. ("GEO") were intentionally losing bids. The Government seeks to admit this evidence against Defendant Brian C. Steppig.

## PRELIMINARY STATEMENT

The Government seeks a pre-trial ruling permitting two cooperating witnesses— [REDACTED] and [REDACTED]—to testify pursuant to Rule 701 concerning whether bids submitted by GEO to municipalities were intentionally losing bids.[1] Defendants claim that the witnesses' proposed testimony "falls well outside the range of lay opinion" allowed by Rule 701 and they cross-move to limit the Government's questioning of cooperating witnesses.[2] Contrary to the Defendants' assertions, the testimony the Government proposes to elicit from [REDACTED] and [REDACTED] comports with the requirements of Rules 701 and 602.

---

[1] In their brief, the Defendants suggest that the Government may seek to elicit testimony pursuant to Fed. R. Evid. 701 from [REDACTED]. Defs'. Br. at 6, 11-12. The Government has moved to introduce lay opinion testimony from [REDACTED] and [REDACTED] only and does not seek to elicit lay opinion testimony from [REDACTED].

[2] Inasmuch as the Defendants' arguments in opposition to the Government's motion and in support of their cross-motion are intertwined, this letter reply brief addresses the Defendants' arguments together.

First, it is well-established that Rule 701 allows a lay witness to offer testimony that is based on his own knowledge and participation in the day-to-day affairs of a business, and that is exactly what [redacted] and [redacted] will do in this case. The testimony, which is based on their first-hand knowledge and experience at General Chemical Corporation ("General"), will show the role that the bid histories played in carrying out the charged conspiracy between GEO and General. Second, their testimony will be helpful by providing the jury an understanding of the liquid aluminum sulfate ("alum") business and how, in that context, the conspiracy worked. Specifically, their testimony will show how General executed its own compliance—and monitored GEO's compliance—with the collusive agreement. Third, their testimony will not qualify as expert testimony within the meaning of Rule 702. Far from being based on scientific, technical, or other specialized knowledge, [redacted] and [redacted] testimony will describe for the jury how, within the everyday operation of the alum business, they calculated stay-away or intentionally losing bids and how they recognized the intentionally losing bids of their co-conspirator, GEO.

Moreover, the Government does not purport, via the introduction of lay opinion testimony, to have the witnesses direct the jury to conclude that Defendant Steppig had collusive intent or knowledge concerning the bids identified by [redacted] and [redacted] as intentionally losing bids. That will be left for the jury to determine.

Finally, the probative value of the proposed Rule 701 evidence vastly outweighs any prejudicial effect on the Defendants.

## ARGUMENT

### I. The Personal Opinions the Government Proposes to Elicit from [redacted] and [redacted] Are Based on Their Personal Knowledge and Experience with Respect to Both the Alum Business and the Conspiracy

Admission of lay opinion testimony requires the proposed evidence to be rationally based on the witness' perception. Fed. R. Evid. 701(a). "A witness testifying about business operations may testify about 'inferences that he could draw from his perception' of a business's records, or 'facts or data perceived' by him in his corporate capacity," and "[l]ay opinion testimony may be based on the witness's own perceptions and 'knowledge and participation in the day-to-day affairs of [the] business.'" *United States v. Polishan*, 336 F.3d 234, 242 (3d Cir. 2003) (internal citations omitted). *See also United States v. Garcia*, 413 F.3d 201, 211 (2d Cir. 2005) (". . . Rule 701 represents no departure from [Rule] 602. . . . Rather, Rule 701 simply recognizes lay opinion as an acceptable 'shorthand' for the 'rendition of facts that the witness personally perceived.'" (internal citations omitted).



There is no dispute that and have personal knowledge about both the alum business generally and the conspiracy in particular. was employed by General from the 1990s to 2010, was one of the originators of the conspiracy between General and GEO, and remained in it until 2010, when he left General. , whose employment with General began in 2005, became both the director of water chemicals marketing and a member of the General/GEO conspiracy in 2008. As director of marketing, she reported directly to until his departure.

and will testify that General kept detailed municipal bid histories,[3] which they worked with every day. They used these bid histories in the ordinary course of General's business to record the publicly-available results of each municipal bid and as a basis for preparing bids as the opportunities arose. For each municipality, the bid histories contain, among other information, the identity of each bidder, the bid amount, the distance of each bidder's manufacturing plant from the customer, and the estimated freight cost for each bidder.

The bid histories also served as an important tool in carrying out the conspiracy between GEO and General, which lasted for approximately fourteen years. Given the volume of bids General submitted in the course of a year, the bid histories were essential to memorializing the information needed to carry out the conspiracy. and will testify that the bid histories showed which supplier was the historical supplier of each customer, information that was the starting point for determining whether General should bid to win or lose at the next bid opportunity. They will testify that if GEO was the historical supplier, they would bid to lose. If General was the historical supplier, they would expect GEO to bid to lose. That was the nub of the agreement between the two companies.

Both and will also testify that they were well acquainted with the components of alum bids, including raw material and freight costs. That was part of their jobs. They will also testify that, because alum is a commodity product, the costs of raw materials differ very little from manufacturer to manufacturer. Similarly, they will testify that each manufacturer's freight costs per mile to deliver alum by common carrier were not significantly different. They will be able to say whether the size of the publicly-available bids submitted by GEO on General's historical accounts were justified by higher freight and/or raw material costs. Based on this foundation—their personal participation in the agreement with GEO, their everyday knowledge of the components of alum bids, the bid histories— and are able to form, and can express, an

---

[3] The proposed lay opinion testimony will pertain only to municipal bids, and not to pulp and paper company pricing.

opinion as to whether a particular GEO bid was a stay-away, and whether GEO was honoring the collusive agreement.[4]

Therefore, the lay opinion testimony from [redacted] and [redacted] will be based on their personal knowledge of the alum business and the conspiratorial agreement with GEO, and on the information contained in bid histories they used regularly in the course of the legitimate and illegitimate business of General.

## II. [redacted] and [redacted] Lay Opinion Testimony Will Be Helpful to the Jury in Determining the Existence and Execution of the Conspiracy between General and GEO

To be admissible, lay witness testimony must be helpful to the trier of fact, Fed. R. Evid. 701(b); that is, it must effectively describe for the jurors something they could not otherwise experience for themselves without drawing upon the first-hand witness' perceptions and experiences. *United States v. Jackson*, 849 F.3d 540, 553 (3d Cir. 2017). The witness' opinion is not admissible if the witness is not in a better position than the jurors to form an opinion or draw an inference. *United States v. Fulton*, 837 F.3d 281, 292 (3d Cir. 2016). Here, [redacted] and [redacted] can offer testimony that will be valuable to the jury in assessing whether the bid histories reflect the existence of the conspiracy.

The Defendants are charged with a conspiracy, by definition a secret agreement, not to compete for each other's historical business, which was executed, in part, by submitting intentionally losing, or stay-away, bids. As participants in the conspiracy, [redacted] and [redacted] knew what to look for, both to determine how General should bid, and to monitor GEO's compliance with the conspiracy. They are, therefore, better positioned than the jury to evaluate the information contained in the bid histories and can, thus, provide guidance to the jury as it considers that evidence.

[redacted] and [redacted] will testify that they consulted the General bid histories to determine whether GEO or General was the historical supplier of any particular customer. They will also testify that the agreement called for General and GEO to refrain from bidding competitively on each other's historical business. They will further testify that they did not talk to anyone at GEO before every bid. They will be able to say, however, that, because the municipal bids were public, they were able to learn what GEO

---

[4] The Defendants argue that some of the bids occurred many years ago, and that the witnesses do not have specific recollections of some of the transactions. Accordingly, they assert, the witnesses should not be permitted to testify about transactions they do not specifically remember. Defs'. Br. at 11. That the witnesses do not specifically recall particular bids is not relevant here. What is relevant is that the witnesses relied on the bid histories, which memorialized the bids and the outcomes, for the information the witnesses needed to determine whether and how aggressively to bid, and to learn whether GEO was keeping its part of the collusive bargain with General. [redacted], in particular, needed to rely on bid data that predated her appointment as director of marketing in order to do her job.

had bid and whether GEO had lived up to the obligations of the agreement. They will also say that GEO's bids were recorded in the General bid histories. They will explain the factors they applied—historical supplier, freight costs, raw material costs—as the basis for opining that any particular GEO bid was a stay-away bid.

According to the Defendants, the jury can draw its own conclusions by reviewing the difference between the winning and losing bids and evaluating the other evidence about the conspiracy. Defs'. Br. at 7. However, while the jury would be able to determine from the bid histories the relative sizes of the GEO and General bids, and which company was the historical supplier, the jury would not be able to tell, without the lay opinion testimony of General co-conspirators, who themselves prepared intentionally losing bids, what factors to consider in determining whether GEO's bids were stay-away bids. Therefore, the testimony of [REDACTED] and [REDACTED] would greatly assist the jurors in determining for themselves whether any of GEO's bids were collusive and, taken together with other evidence, whether Steppig submitted intentionally losing bids, or caused them to be submitted.

### III. [REDACTED] and [REDACTED] Lay Opinion Testimony Is Not Based on Scientific, Technical, or Specialized Knowledge Within the Meaning of Rule 702

The final prong of Rule 701's test for admissibility of lay opinion testimony is the requirement that it not be based on scientific, technical, or specialized knowledge within the meaning of Rule 702. Fed. R. Evid. 701(c). The lay opinion testimony the Government proposes to offer falls squarely within Rule 701 and is not encompassed by Rule 702.

The Defendants assert that the opinions the Government seeks to introduce through [REDACTED] and [REDACTED] would necessarily be based on technical, specialized knowledge—expert knowledge—rather than lay witness opinion based on personal, non-expert knowledge. The Defendants arrive at this erroneous conclusion on the basis of the fact that [REDACTED] and [REDACTED] would call upon their experience in the alum business and the knowledge of the tools of their trade to form their opinions. If the Defendants are right, that would lead to the conclusion that all lay opinion relating to the witness' profession or occupation is expert opinion because it is based on specialized knowledge, rather than on the personal knowledge and experience of the witness, rendering Rule 701 meaningless. The Federal Rules of Evidence, however, preserve the difference between lay and expert testimony:

> [T]he distinction between lay and expert witness testimony is that lay testimony results from a process of reasoning familiar in everyday life, while expert testimony results from a process of reasoning *which can be mastered only by specialists in the field.*

*United States v. Kale*, 445 Fed. Appx. 482, 485 (3d Cir. 2011) (quoting Fed. R. Evid. 701 (advisory committee's note (2000 amend.)) (emphasis added).

This is not a case in which the witnesses are being called upon to explain the chemical properties of alum or to expound on alum manufacturing processes and quality controls. Here, the witnesses will be asked to explain how they prepared bids and the factors that are pertinent to calculating and recognizing intentionally losing bids. These are matters, based on the day-to-day conduct of both the alum business and the General/GEO conspiracy that can be explained to, and understood by, jurors who might have no background the alum business or in bidding for public contracts. Scientific or technical or other special expertise are not required to assist the jury in its evaluation of the nature of the GEO bids. The jurors will have the information they need to draw their own conclusions about whether GEO submitted stay-away bids and whether the bid histories, therefore, reflect the existence of the General/GEO conspiracy.

## IV. The Probative Value of the Proposed Lay Opinion Testimony Significantly Outweighs Any Prejudicial Effect of the Evidence

Rule 403 requires that evidence be excluded if its prejudicial effect substantially outweighs its probative value. The Defendants characterize the proposed lay opinion testimony as inflammatory. Defs'. Br. at 14. To the contrary, the lay witness testimony will illuminate for the jury the method by which the conspirators executed their collusive agreement—the composition and submission of intentionally losing bids to ensure that the conspirators did not compete for each other's historical business, a core goal of the conspiracy. Thus, the probative value of this evidence reflecting the existence and operation of the conspiracy significantly outweighs any prejudicial effect admission of this evidence might pose.

**CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court permit [redacted] and [redacted] to state their personal opinions, pursuant to Fed. R. Evid. 701, concerning whether bids by GEO to municipalities were intentionally losing bids. The Government further requests that the Court deny the Defendants' Cross-Motion.

Respectfully submitted,

/s/ Patricia L. Jannaco
Patricia L. Jannaco
Mary Anne F. Carnival
Frank A. Cavanagh
Sean M. Farrell

Trial Attorneys
United States Department of Justice
Antitrust Division
26 Federal Plaza, Suite 3630
New York, New York 10278
patricia.jannaco@usdoj.gov

cc: J. Bruce Maffeo, Esq.
Nicole H. Sprinzen, Esq.
Counsel for Brian C. Steppig

Robert C. Scrivo, Esq.
James. Ross Smart, Esq.
Walter R. Krzastek, Esq.
Michael B. Devins, Esq.
Counsel for Vincent J. Opalewski