UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Hon. Jose L. Linares |
| V. | Crim. No. 2:16-cr-00065-JLL |
| VINCENT J. OPALEWSKI, and BRIAN C. STEPPIG, | **Document Electronically Filed** |
| Defendants. | |

REPLY BRIEF IN SUPPORT OF VINCENT J. OPALEWSKI'S MOTION *IN LIMINE* TO LIMIT THE GOVERNMENT'S INTRODUCTION OF EVIDENCE OF UNCHARGED ACTS ON RULE 404(b) GROUNDS

Walter R. Krzastek
Michael B. Devins
**McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP**
1300 Mount Kemble Avenue
P.O. Box 2075
(973) 993-8100
(973) 425-0161 (fax)

James R. Smart (admitted *pro hac vice*)
**McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP**
30 Jelliff Lane
Southport, CT 06890
(203) 319-4039
(203) 319-4034 (fax)

Robert C. Scrivo
**O'TOOLE SCRIVO, LLC**
14 Village Park Road
Cedar Grove, NJ 07009
(973) 239-5700
(973) 239-3400(f)

# TABLE OF CONTENTS

ARGUMENT ........................................................................................................................... 1

I.   The Court Should Order Exclusion of Evidence Regarding Any Alleged Separate Conspiracies with Any Other Competitors, in Addition to Those Named in the Rule 404(b) Notice, Because the Government Has Offered No Opposition to That Request. .......................... 1

II.  The Government's Proffered Other Acts Evidence Regarding ▓▓▓ and ▓▓ Should Be Excluded Because the Government Fails to Justify Its Admission. .............................................. 1

    A.   The Government Has Evidently Abandoned Any Effort to Justify Introduction of the Other Acts Evidence on the Grounds That It Is Essential Background, Part of the Charged Conspiracy, or Intrinsic to the Charged Conspiracy. ........................................................... 2

    B.   The Government's *Modus Operandi* Argument Fails Because Identity Is Not at Issue and the Alleged Methods Are Not Distinctive, "Signature" Methods, Among Other Reasons. ....... 2

    C.   The Government's "Knowledge" Justification Also Fails Because, *Inter Alia*, the Proffered Evidence Is Not Probative of Mr. Opalewski's Knowledge of the Charged Conspiracy ................................................................................................................................. 7

III.  The Government's Arguments Concerning the Adequacy of Its Notice Are Also Unavailing. ........................................................................................................................... 11

IV.  The Court Should Disallow Introduction of Evidence Concerning Alleged Wrongdoing After the February 24, 2011 Date That the Government Earlier Represented As the End of the Charged Conspiracy ............................................................................................................... 12

CONCLUSION ..................................................................................................................... 14

CERTIFICATE OF SERVICE ............................................................................................... 15

i

# TABLE OF AUTHORITIES

**Cases**

*Becker v. ARCO*, 207 F.3d 176, 199 (3d Cir. 2000) ............................................................... 7

*Chavez v. City of Albuquerque,* 402 F.3d 1039, 1046 (10th Cir. 2005) .......................................... 4

*Commodity Futures Trading Comm'n v. Rosenberg*, 85 F. Supp. 2d 424, 438 n.16 (D.N.J. 2000) 4

*In re Ins. Brokerage Antitrust Litig.*, No. CIV.A.04 5184 FSH, 2006 WL 2850607 at *6 (D.N.J. Oct. 3, 2006) ............................................................................................................. 6

*J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1269 n.9 (3d Cir. 1994) ....................................................................................................................... 4

*Petruzzi's IGA Supermarkets v. Darling-Delaware Co.*, 998 F.2d 1224, 1228 (3d Cir. 1993) ...... 6

*United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) ............................................. 3, 5, 9, 10

*United States v. Cheatham*, No. CRIM. 3:2006-29, 2008 WL 311028, at *10 (W.D. Pa. Feb. 1, 2008) ....................................................................................................................... 12

*United States v. Console*, 13 F.3d 641 (3d Cir. 1993) ............................................................. 11

*United States v. Pinney*, 967 F.2d 912, 916 (3d Cir. 1992) ............................................. 4, 5, 6, 7

*United States v. Repak*, 852 F.3d 230, 244 (3d Cir. 2017) ....................................................... 10, 11

**Rules**

Fed. R. Evid. 404(b) .......................................................................................................... passim

**Treatises**

22B Wright & Graham, Federal Practice & Procedure §5240, at 141-42 (2014) ........................... 3

22B Wright & Graham, Federal Practice & Procedure §5246, at 175 .......................................... 4

Defendant Opalewski respectfully submits this brief in reply to the government's August 21 brief in opposition to Opalewski's motion *in limine* regarding Rule 404(b) evidence. (ECF Doc. Nos. 52-1 and 53.) Notwithstanding the government's opposition, defendant's motion should be granted.

## ARGUMENT

**I. The Court Should Order Exclusion of Evidence Regarding Any Alleged Separate Conspiracies with Any Other Competitors, in Addition to Those Named in the Rule 404(b) Notice, Because the Government Has Offered No Opposition to That Request.**

To begin with, the government puts up no opposition with respect to our requests for exclusion of evidence regarding any alleged separate conspiracies with any other competitors, in addition to those named in the 404(b) notice, and of evidence regarding transactions concerning products other than aluminum sulfate. As noted in our opening brief, D. Br. 18-21, the government's preliminary exhibit list suggests an intention to introduce such evidence. *Id.* As also noted in our opening brief, however, introduction of such evidence would be improper. The government has said not a word in opposition – and, indeed, it disavows the intention to use evidence concerning ferric sulfate. G. Br. 2. Our requests for exclusion of such evidence should be granted.

**II. The Government's Proffered Other Acts Evidence Regarding ▮▮▮▮ and ▮▮ Should Be Excluded Because the Government Fails to Justify Its Admission.**

The government also fails to justify admission of the proffered evidence concerning the alleged "other acts" conspiracies with ▮▮▮▮ and ▮▮.

### A. The Government Has Evidently Abandoned Any Effort to Justify Introduction of the Other Acts Evidence on the Grounds That It Is Essential Background, Part of the Charged Conspiracy, or Intrinsic to the Charged Conspiracy.

First, the government has evidently abandoned any intention to pursue justification of introducing such evidence on the grounds that it is essential background, part of the charged conspiracy or intrinsic to the charged conspiracy. The government's Rule 404(b) notice letter suggested such an intention. *See* Certification of Walter R. Krzastek dated August 7, 2017 (ECF Doc. No. 52-2), Exhibit E, at 1 (July 14, 2017 Letter from DOJ, at 1) ("The Government does not necessarily consider Rule 404(b) to be applicable to all of the evidence described below because it is either part of the charged conspiracy, intrinsic to the charged conspiracy, or it will be introduced as essential background evidence that will assist the jury in comprehending the conduct charged in the Indictment."). However, in response to our explanation of the failure of that reasoning, D. Br. 8-10, the government has advanced no arguments. As the government has apparently recognized, the other acts evidence is not admissible as essential background, part of the charged conspiracy or intrinsic to it.

### B. The Government's *Modus Operandi* Argument Fails Because Identity Is Not at Issue and the Alleged Methods Are Not Distinctive, "Signature" Methods, Among Other Reasons.

Moreover, the rationales that the government does advance for admission of its proffered evidence of alleged conspiracies involving ▮▮▮ and ▮▮, under Rule 404(b), are unpersuasive.

First, the government's effort to sustain its burden on the grounds that it shows "that the defendant had a particular *modus operandi*," G. Br. 7, are unsuccessful. To begin with, the

2

government's argument on this point is rooted in an incorrect statement of the law. The government asserts that "the plain text of Rule 404(b) allows for the admission of other-acts evidence to show . . . that the defendant had a particular *modus operandi*." G. Br. 7. Actually, the rule makes no mention of *modus operandi*. *See* Rule 404(b)(2) (providing, in relevant part that uncharged acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.") This misstatement leaves unclear which of the limited purposes provided by the rule the government actually means to rely upon when it invokes *"modus operandi"* – a failure which, in its own right, leaves the government unable to satisfy its obligation to justify admission of the evidence. *See, e.g., United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014) ("[T]he party seeking to admit evidence under Rule 404(b)(2) bears the burden of demonstrating its applicability.") .

Moreover, were the Court inclined to fill in the gaps left by the government and guess at the evidentiary basis upon which the government means to rely, the result would still be unavailing for the government. The government argues that in the alleged ▮▮▮ and ▮▮ conspiracies, the "methods [used] . . . were sufficiently distinct such that they establish his *modus operandi*; and . . . the conspiracy with ▮▮ was carried out using the same *modus operandi*, meaning that the jury can draw the inference . . . that Opalewski also participated in the conspiracy with ▮▮." G. Br. 9. The government's reasoning, in other words, indicates that it is relying upon a "signature methods" rationale. It is noteworthy that, as commentators have observed, this rationale is often used as simply a cover for introduction of propensity evidence. *See, e.g.,* 22B Wright & Graham, Federal Practice & Procedure §5240, at 141-42 (2014) (noting in particular in the context of *modus operandi* rationale that this rationale for prior

3

bad acts evidence is often "nothing but [a] euphemism[] for the defendant's propensity to engage in crime" and "has sometimes produced reasoning that can only be described as patent evasions of the exclusionary rule."). Indeed, the government's very explanation of the applicability of the rationale here basically amounts to an acknowledgement of this illegitimate purpose: Opalewski did it before, and therefore "the jury can draw the inference . . . that Opalewski also participated in the conspiracy with ▇." G. Br. 9.

More technically, the government's "signature methods" rationale is noteworthy insofar as, where such a rationale *is* the basis of a legitimate evidentiary purpose, it goes to "identity" under Rule 404(b)(2). *See, e.g., Commodity Futures Trading Comm'n v. Rosenberg*, 85 F. Supp. 2d 424, 438 n.16 (D.N.J. 2000) ("*Modus operandi,* usually a method of proving identity, *see J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1269 n.9 (3d Cir. 1994), is a type of signature quality or striking similarity between two events."); 22B Wright & Graham, Federal Practice & Procedure §5246, at 175 ("The 'handiwork or signature exception' or the exception for 'modus operandi' is . . . one method by which other crimes can prove identity"); *Chavez v. City of Albuquerque*, 402 F.3d 1039, 1046 (10th Cir. 2005) ("[P]roof of a 'modus operandi' is only relevant where there is an issue regarding the defendant's identity.") This is further confirmed by the one and only case cited by the government dealing with "*modus operandi,*" *United States v. Pinney*, 967 F.2d 912, 916 (3d Cir. 1992), G. Br. 9, in which the other crimes evidence, an assertedly similar rape, was purportedly offered to prove the identity of the defendant as the perpetrator. *Id.* (reversing defendant's conviction because of the improper admission of the other crime evidence).

In this light, the government's reliance upon "*modus operandi*" reasoning is fatally flawed insofar as "identity" is simply not an issue in this case. To introduce evidence of prior

4

bad acts, "the proponent must identify a specific purpose that is *of consequence* in determining the action." *Caldwell*, 760 F.3d at 276 (emphasis added). It is undisputed that Mr. Opalewski worked in various capacities overseeing the alum business at ▬▬▬▬▬ during a portion of the period at issue in this case, and served as president "from approximately 2009 to 2011." G. Br. 7, n.3. The trial simply will not involve the question of whether Mr. Opalewski was the supervisor who managed and directed the employees who have become the government's cooperating witnesses. Indeed, the government has no doubt declined to expressly cite "identity" and to use the cloak of "*modus operandi*" because identity is so obviously not an issue in this case.

The conclusion of the Third Circuit in *Pinney*, the very case relied upon by the government here on the *modus operandi* issue, is instructive:

> [T]here is no dispute in this case about [] identity .... The obvious reason the government wanted [the other crime] testimony before the jury was because of the substantial likelihood that one or more members of the jury would use this highly inflammatory evidence for exactly the purpose Rule 404(b) declared to be improper – *i.e.*, drawing the inference that [defendant] was the kind of person who [committed the crime at issue] and that, accordingly, he must have [committed the charged crime as well.]

*Pinney*, 967 F.2d at 917. Similarly here – identity is not at issue and the government's *modus operandi* rationale is nothing but a pretext for introducing propensity evidence.

In any event, the government does not, and cannot, establish how Opalewski's alleged acts in the uncharged conspiracies are in any way unique, unusual or distinct, and therefore the *modus operandi* rationale would be simply inapplicable here. To prove *modus operandi*, "much more is demanded than the mere repeated commission of crimes of the same class, such as repeated murders, robberies or rapes. The pattern and characteristics must be so unusual and distinctive as to be like a signature." *Pinney*, 967 F.2d at 917.

5

In defense of its *modus operandi* argument here, the government relies upon the alleged methods of "agreeing to 'stay away' from [co-conspirator's] 'historical' customers by not pursuing the[ir] business" and "submitting intentionally losing or 'throw away' bids." G. Br. 9. The government's own explanation here confirms the generic nature of these "methods": it says not that *Opalewski* specifically used these means, but rather ▮▮▮▮ . . . used the same approach to carry out the uncharged conspiracies" and the one that has been charged, G. Br. 9 (emphasis added); even more explicitly, the government at another point refers to these as "*the methods Opalewski and his subordinates used.*" *Id.* (emphasis added). Indeed, these are the very "manner and means of the conspiracy" charged as to *all* the "co-conspirators" in the indictment itself. ECF Doc. No. 1. ¶ 16(b), (d). This is hardly a situation where "[t]he pattern and characteristics are so unusual and distinctive as to be like a signature" of Opalewski. *Pinney,* 967 F.2d at 917.

The allegations in numerous other cases before other courts further confirm that these same generic methods are typically alleged in other garden variety antitrust cases and do not qualify as unusual or distinct acts in regard to the sort of antitrust crime at issue. *See, e.g., Petruzzi's IGA Supermarkets v. Darling-Delaware Co.,* 998 F.2d 1224, 1228 (3d Cir. 1993) (bid rigging scheme allegedly involved, among other things, agreement to submit "sham," or uncompetitively high, bids on accounts already serviced by an incumbent co-conspirator, and "settling 'allocation disputes,' where one competitor acquired an account owned by a competitor, by requiring the former to return the account or transfer an account of equal tonnage to the wronged renderer"); *In re Ins. Brokerage Antitrust Litig.,* No. CIV.A.04 5184 FSH, 2006 WL 2850607 at *6 (D.N.J. Oct. 3, 2006) (defendants were alleged to have submitted quotes for insurance rates that "(a) were higher than those of incumbent carriers; (b) were designed to

6

insure that the incumbent carriers would win certain business; and (c) resulted in clients being tricked and deceived by this deceptive bidding process.").

The government's *modus operandi* argument, thus, fails both because identity is not at issue in the case and because these acts cannot be considered demonstrative of Mr. Opalewski's alleged distinctive *modus operandi* in dealing with other alum producers. *See Becker v. ARCO*, 207 F.3d 176, 199 (3d Cir. 2000) ("[T]here are two problems with admitting the Seaver evidence on the theory that it establishes ARCO's pattern, practice or *modus operandi*: identity was not a disputed issue in this case, and it cannot be argued successfully that the similarities between the two events show a unique or distinctive *modus operandi*."); *see also Pinney*, 967 F.2d at 916 (Third Circuit noting, hypothetically, that, where identity is at issue, "[a] jury can rationally infer from evidence that the defendant committed a prior crime in an unusual and distinctive manner and evidence that a second similar crime was committed in the same unusual and distinctive manner that the defendant committed the second crime. This case, however, does not involve such signature evidence. The evidence concerning the manner in which the two alleged crimes were committed here was neither sufficiently detailed nor significantly unusual to permit any inference that the perpetrator of the second assault was the same perpetrator of the first."). The government's stretch for a *modus operandi* argument only emphasizes that it lacks a legitimate evidentiary basis for the other crimes evidence it seeks to use.

### C. The Government's "Knowledge" Justification Also Fails Because, *Inter Alia*, the Proffered Evidence Is Not Probative of Mr. Opalewski's Knowledge of the Charged Conspiracy.

The government's invocation of "knowledge" as its alleged evidentiary purpose gets it no further.

7

The government's effort to justify admission of the uncharged conspiracies as Rule 404(b) evidence on this alternative basis fails on account of the absence of information regarding any involvement of Opalewski in the other alleged conspiracies, among other reasons. The focus of the proffered other crimes evidence concerning ▇ consists of evidence concerning "seven specific accounts that were subject to the ▇ conspiracy," G. Br. 3-4 – a broad evidentiary proffer that, as we have noted, would significantly expand the scope of this trial if allowed.[1] Nevertheless, in the entire discussion of this proffered evidence, and of the testimony about ▇ by cooperating witness ▇ whom the government proposes to use to introduce this evidence, the government fails to even *mention* Opalewski's name. *See id.* Indeed, the government provides almost no explanation whatsoever as to what the evidence concerning these accounts will show, let alone any detail regarding Opalewski's involvement with them. *Id.* In light of this glaring omission, the government cannot show that anything material about Opalewski's knowing participation in the charged conspiracy – or in *any* conspiracy – would be established by the proffered evidence.

The government does purport to offer testimony by ▇ indicating that "Opalewski, in reviewing bids, including those involving ▇, typically asked if ▇ or other

---

[1] In its opposition, the government appears to narrow the scope of the alleged uncharged conspiracies, stating that the ▇ alleged conspiracy involved seven accounts over a three year period and the ▇ alleged conspiracy only involved a single bid, which neither ▇ nor ▇ won. This representation appears to be in response to Mr. Opalewski's contention that the government failed to provide even the most basic information about the alleged uncharged conspiracies, such as their alleged duration. Taking the government at its word, these two separate, uncharged alleged conspiracies, as the government now describes them, are much more narrow and isolated than the sweeping charged ▇ conspiracy. As such, the uncharged conspiracies are not similar to the charged conspiracy. Put differently, alleged knowledge of a one-off discussion about a single account (or handful of accounts) does not create a link in the chain of evidence that would enable an inference of knowledge of a completely different much broader and longer conspiracy with a different company.

8

employees had checked with ▮▮▮▮ relevant employees to confirm ▮▮▮▮ intentions with respect to the bids." G. Br. 4. However, this proffered evidence is unmoored from any of the evidence the government seeks to offer regarding the accounts allegedly affected by the ▮▮▮▮ conspiracy and accordingly does not advance the government's argument for admission of that evidence. Indeed, it seems to be unmoored from any particular accounts or competitors, and devoid of any detail generally. This sort of scattershot broadside cannot be justified as the sort of limited, targeted other crimes evidence allowed for specific purposes by Rule 404(b).

It is well settled in the Third Circuit that "the party seeking to admit evidence under Rule 404(b)(2) bears the burden of demonstrating its applicability." *Caldwell*, 760 F.3d at 276. The government here clearly fails to sustain its burden.

Although the government purports to offer more specifics regarding its proffered evidence concerning the alleged separate conspiracy involving ▮▮▮, it also fails to satisfy its burden here. The government proffers testimony by ▮▮▮▮ concerning his dealings with ▮▮ in regard to the ▮▮▮▮ account. G. Br. 4-5.[2] ▮▮▮▮ is purportedly expected to testify that he spoke with an official from ▮▮▮, "who assured him that ▮▮▮ would not bid competitively for ▮▮▮[, but that] a third, non-conspiring competitor undercut ▮▮▮ bid and won the account." *Id.* at 5. Again, there is no allegation of any

---

[2] The government also intends to introduce evidence concerning two separate and discrete phone calls allegedly placed from ▮▮▮ to (1) ▮▮▮ and (2) ▮▮▮, with respect to ▮▮▮ asset purchase from yet another provider, ▮▮▮▮. G. Br. 4. Insofar as this aspect of the government's proffer involves ▮▮▮, the company actually on the other side of the charged conspiracy, we do not at this time seek to challenge the proffer on Rule 404(b) grounds. (We understand that the government is not asserting that this evidence shows conspiratorial activity on the part of all three companies, ▮▮▮▮▮▮ collectively. To the extent the government does present evidence or argument alleging such tripartite activity, defendants reserve the right to object on Rule 404 and other grounds.)

9

conduct by Mr. Opalewski, and therefore, again, no legitimate inference could be drawn from this evidence regarding Mr. Opalewski's knowledge of the charged conspiracy.

Although the government goes on to say that ▆▆▆ would also testify that, after losing the ▆▆▆ bid, he, ▆▆▆ and Mr. Opalewski supposedly put together for ▆▆▆ board of directors a written explanation of the bid loss that looked like a pre-bid analysis, this part of the government's proffer comes no closer to satisfying the government's burden to justify introduction of the evidence on the grounds of Rule 404(b). Again, such evidence would not be probative of Mr. Opalewski's knowledge of the alleged conspiracy with ▆▆▆, let alone the alleged charged conspiracy. The government itself states that the ▆▆▆ account was lost due to competition from a third-party, one that admittedly had nothing to do with any conspiracy, and, as noted, to the extent ▆▆▆ is expected to testify regarding collusive communications with ▆▆▆ regarding this account, any mention of participation by Mr. Opalewski in said communications is conspicuously lacking. Accordingly, to the extent the evidence suggests wrongdoing by Mr. Opalewski, it has to do with his alleged acquiescence in presenting a report purporting to be something it was not. Given what the government has described, the reasons for his doing so appear much more consistent with an effort to mitigate the impact of poor business judgment in being outbid by a competitor and, apparently, in not ensuring the preparation of thorough written analysis in advance of so large a bid. No meaningful inference of knowledge on the part of Mr. Opalewski of any conspiracy would be supported by this inflammatory evidence.

Clearly, the government has again failed to carry its burden to "explain [with careful precision] how [the evidence] fits into a chain of inferences – a chain that connects the evidence to a proper purpose, no link of which is a forbidden propensity inference." *Caldwell*, 760 F.3d at

281 (3d Cir. 2014) (internal quotation marks omitted); *see also United States v. Repak*, 852 F.3d 230, 244 (3d Cir. 2017) ("this analysis is inexact and fails to adequately link the other-acts evidence to a non-propensity purpose with 'careful precision"). The result of admitting such evidence would clearly be unduly prejudicial to Mr. Opalewski. It should not be allowed.[3]

### III. The Government's Arguments Concerning the Adequacy of Its Notice Are Also Unavailing.

Although the government asks the Court to brush aside the issue of its failure to provide sufficient notice under Rule 404(b), G. Br. 10-11, the government's arguments in this regard are also unavailing. As explained above, even after submission of its opposition brief, the government still has not met its burden to adequately describe the evidence at issue and explain how the requisite chain of legitimate inferences would be satisfied. The government has not

---

[3] The government's reliance on *United States v. Repak*, 852 F.3d 230 (3d Cir. 2017), and *United States v. Console*, 13 F.3d 641 (3d Cir. 1993), is misplaced. Unlike here, the Third Circuit in *Repak* was able to discern a straightforward logical chain of inferences from the evidence of the prior bad acts to the defendant's knowledge with respect to the crime at issue, that is, his knowledge of the purpose of the gifts he received in the charged bribery scheme. *Repak*, 852 F.3d at 245 ("Repak repeatedly solicited and received items from JRA contractors at great cost to the contractors; the growing cost of these items to the JRA contractors tends to show that Repak knew that these items were not unilateral token gifts; therefore, it is more likely that Repak knowingly and intentionally accepted the roof and excavating services with an understanding that those items were to influence the award of JRA contracts to those contractors."); *id.* n.4 (the Court also identified another justification for the introduction of the evidence of the uncharged acts: "the uncharged solicitations may also have been used to explicate Repak's guilt by proving insight into the minds of the contractors Repak extorted: through Repak's repeated demands for items, the JRA contractors came to believe that they would lose JRA work if they failed to acquiesce in his demands."). Similarly, the evidence suggesting knowledge in regard to the other acts evidence in *Console* was also clearly articulable and the chain of legitimate inferences leading to the conclusion that defendants' fraud was perpetrated with knowledge of its falsity was clearly discernable. *Console*, 13 F.3d at 658-59 (the evidence of prior acts of submission of fraudulent doctors' bills by the defendant lawyers was supported by admission of their own files from the other cases and, unlike here, related to "a broader plan to defraud insurance companies through fraudulent personal injury claims," and not a separate alleged scheme, as here). These cases do not advance the government's argument given the shortcomings of its showing here.

11

even attempted to address the cases cited in our opening brief holding that the government's proffered other acts evidence will not be admitted absent such an explanation. D. Br. 6 (citing, among others, *United States v. Cheatham*, No. CRIM. 3:2006-29, 2008 WL 311028, at *10 (W.D. Pa. Feb. 1, 2008) (Because the "Government has failed to present the logical chain of inferences . . . . all of its Rule 404(b) evidence proffered in its Notice . . . will be excluded at the time of trial.") Having failed in the same manner here, its proffered Rule 404(b) evidence should also be excluded.

### IV. The Court Should Disallow Introduction of Evidence Concerning Alleged Wrongdoing After the February 24, 2011 Date That the Government Earlier Represented As the End of the Charged Conspiracy.

Finally, in closing we highlight for the Court that in its opposition brief, the government has purported to substantially expand the temporal scope of the alleged conspiracy, claiming that it ran significantly later than earlier represented. In passing, the government notes, in a footnote, that "▮▮▮▮ involvement in the marketing of ▮▮▮▮ water treatment chemicals began in 2008. *The charged conspiracy itself ended in late 2011.*" Gov. Br. 3, n.2 (emphasis added). This assertion that the conspiracy ended in late 2011 is not only contrary to the indictment, *see* Indictment, ¶14 ("Defendant OPALEWSKI knowingly entered into and participated in the conspiracy from at least as early as 2005 and continuing until approximately February 2011"), but also walks back from the government's express statements to the defense in the course of negotiations concerning discovery, in which the government emphasized its position that the last act in furtherance of the conspiracy took place on February 24, 2011, and emphasized that it had held that view consistently since before the indictment. *See, e.g.,* Exhibit A, G. Ltr. Mar. 23, 2017, at 1 ("the last act in furtherance of the conspiracy occurred on February 24, 2011 . . . ."); *id.* n.1 ("The Government has taken the view that the last act in furtherance of the conspiracy

12

occurred on February 24, 2011 since at least December 2015"); *id.* at 2 ("[T]he Government never stated or even suggested that the conduct continued until March 3, 2011. . . . [T]he Government deemed ▓▓ to have effectively withdrawn from the conspiracy on March 3, 2011 because that was the date it had made its participation in the conspiracy known to the Government."). These statements were intended to induce the defense's reliance in preparation for trial and in regard to pretrial motion practice, and indeed we have relied upon them and have conducted our trial preparation accordingly.

The Court should not allow the government to prejudicially shift the alleged conspiracy end date and walk back on its representations at this late stage. The Court should disallow introduction of evidence concerning alleged wrongdoing after the February 24, 2011 date that the government earlier represented to mark the end of the charged conspiracy.

## CONCLUSION

For the reasons herein and Mr. Opalewski's moving papers, the Court should order that the government may not introduce the evidence of uncharged conduct described above.

Respectfully submitted,
**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**

/s/ Walter R. Krzastek
Walter R. Krzastek
wkrzastek@mdmc-law.com
Michael B. Devins
mdevins@mdmc-law.com
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
(973)993-8100
(973)425-0161(f)

James R. Smart (admitted *pro hac vice*)
jsmart@mdmc-law.com
**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
30 Jelliff Lane
Southport, CT 06890
(203) 319-4039
(203) 319-4034 (f)

**O'TOOLE SCRIVO, LLC**
/s/ Robert C. Scrivo
Robert C. Scrivo
14 Village Park Road
Cedar Grove, NJ 07009
(973) 239-5700
(973) 239-3400 (f)
rscrivo@oslaw.com
*Attorneys for Defendant, Vincent J. Opalewski*

## CERTIFICATE OF SERVICE

I, Walter R. Krzastek, hereby certify that on August 28, 2017, I caused the foregoing reply brief and Certification of Walter R. Krzastek to be served electronically on counsel of record by the Court's Electronic Case Filing (ECF) system.

/s/ Walter R. Krzastek